IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY BLACKMAN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:12-CV-2715 |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to the consent of the parties. (Doc. 15). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Timothy Blackman's applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*., and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS the case back to the Social Security Administration.

## I.  PROCEDURAL HISTORY & PERSONAL BACKGROUND

Plaintiff Timothy Blackman ("Plaintiff" or "Blackman") filed applications for Supplemental Security Income benefits and Disability Insurance benefits on November 19, 2008. (Tr. 59-63, 673-83).   Blackman alleged he became disabled on April 9, 2008 due to arthritis and a prior back/shoulder injury. (Tr. 77-78).  The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 32-43, 36-37).

1

At Blackman's request, administrative law judge ("ALJ") Edmund Round convened an administrative hearing on July 18, 2011 to evaluate his applications. (Tr. 684-712). Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE"), Mark Anderson, also appeared and testified. (*Id.*). On August 31, 2011, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled. (Tr. 15-23). After applying the five-step sequential analysis,[1] the ALJ determined Blackman retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 10-11). The Appeals Council denied the request for review, making the ALJ's determination the final decision of the Commissioner. (Tr.

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)     If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)     If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)     If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)     If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)     Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

5-7). Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Blackman was born on October 12, 1967, and was 43-years-old on the date the ALJ rendered his decision. (Tr. 109, 689). Accordingly, at all relevant times, he was deemed a "younger person" for Social Security purposes. 20 C.F.R. §§ 404.1563(c), 416.963(d). Plaintiff completed the eleventh grade and had previous work experience as a material handler, dishwasher, and bagger. (Tr. 690, 703-04).

## II. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.

2. The claimant has not engaged in substantial gainful activity since April 9, 2008, the alleged onset date.

3. The claimant has the following severe impairments: cervical and lumbar ankylosing spondylitis, osteoarthritis in both hips after right hip replacement, and borderline intellectual functioning.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except he can lift, carry, push and pull a maximum of 10 pounds frequently. He can sit up to six hours in an eight-hour workday with normal breaks. He can stand and walk two hours in an eight-hour workday with normal breaks. The claimant can never climb ladders, ropes and scaffolds, but can occasionally climb stairs and ramps. He can occasionally balance, stoop, kneel, crouch and crawl. The claimant is limited to tasks that are simple, routine, and low[] stress. He is precluded from tasks that involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on October 12, 1967 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8. The claimant has a limited education and is able to communicate in English.

. . .

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 9, 2008, through the date of this decision.

(Tr. 17-23) (internal citations omitted).

### III. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards.  *See Cunningham v. Apfel*, 12 Fed. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535

(6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Blackman argues that the ALJ erroneously calculated his residual functional capacity, failed to accurately assess his credibility, and erred at step three in the sequential evaluation. After a review of Blackman's allegations of error and the ALJ's opinion, the undersigned finds that remand is necessary.

### A. Whether substantial evidence supports the ALJ's residual functional capacity finding

#### 1. Osteoarthritis of the left shoulder

Plaintiff argues that the ALJ wholly ignored his left shoulder osteoarthritis at step two of the sequential analysis and when rendering his RFC determination. Blackman's observation that the ALJ failed to discuss his shoulder osteoarthritis at step two is accurate, but the ALJ's error in this regard is harmless. (Tr. 17). As long as the ALJ finds the claimant to suffer from at least one severe impairment and continues to evaluate both the claimant's severe and non-severe

impairments at the latter stages of the sequential analysis, remand is not necessary.  *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 577 (6th Cir. 2009).  Contrary to Plaintiff's argument, the ALJ did not ignore Plaintiff's shoulder impairment at later stages of his analysis.  When formulating the RFC, the ALJ observed that an August 2008 x-ray showed moderate osteoarthritis in Blackman's left shoulder. (Tr. 20).  Thus, the ALJ at least considered the impairment, making it inappropriate to remand on this note.

Still, Blackman maintains that the ALJ's RFC analysis, as it relates to his shoulder impairment, is flawed.  This argument is well taken.  Blackman cites to a range of medical evidence, which he argues supports a limitation relating to the use of his left arm.  Among this evidence are the opinions of two state agency reviewing physicians, Drs. McCloud and Caldwell.  On January 22, 2009, Dr. McCloud conducted a review of Blackman's medical evidence and opined that, among other limitations, Blackman would be limited to occasional overhead reaching with the left arm. (Tr. 224).  Dr. Caldwell affirmed Dr. McCloud's findings on February 23, 2010. (Tr. 359).

It is well established that for a decision to stand, an ALJ is not required to discuss every piece of evidence in the record. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004).  Nonetheless, if the opinion of a medical source contradicts the RFC finding, the ALJ must explain why he did not include its limitations in his determination of a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) ("In rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis.").  Social Security Ruling 96-8p states: "The RFC

assessment must always consider and address medical source opinions.  If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

In his opinion, the ALJ did not discuss why he omitted the occasional reaching limitation assigned to Blackman by Drs. McCloud or Caldwell.  Although the ALJ may well have considered these state agency consultants' opinions, the ALJ did not mention these medical sources in his decision, contrary to the Commissioner's argument.  The only state agency opinion relating to Blackman's physical impairments the ALJ discussed was Dr. Villanueva's from June 2008. (Tr. 21).  Dr. Villanueva did not recommend a limitation on overhead reaching and his decision pre-dates those of Drs. McCloud and Caldwell. (Tr. 177-84).  The ALJ gave little weight to Dr. Villanueva's assessment because the reviewer did not have the opportunity to examine all of the evidence submitted at the hearing level.  The Court cannot infer from this discussion that the ALJ would have rejected the opinions of Drs. McCloud and Caldwell, who conducted their reviews later in relevant period, and, as a result, had a greater span of record evidence before them.  Because the ALJ's calculation of Plaintiff's RFC was less restrictive than the state consultants' limitation, and therefore, contradicted their opinions, S.S.R. 96-8p required the ALJ to explain his decision not to include the reviewing consultants' reaching limitation in Plaintiff's RFC.

The Commissioner also maintains that remand is not required because evidence shows that once Plaintiff began treatment with Humira, Plaintiff had, at most, a slight restriction in the range of motion of his left shoulder.  While there may be evidence in the record showing that Plaintiff was not restricted in reaching with his left arm, the ALJ did not discuss his decision to omit the limitation suggested by Drs. McCloud and Caldwell.  Relying on other information in

the record to explain that omission would require the Court to engage in *post hock* rationalization that is prohibited. The undersigned's review of the ALJ's decision is limited to consideration of the reasoning supplied by the ALJ. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009); *Martinez v. Comm'r of Soc. Sec.*, 692 F. Supp. 2d 822, 826 (N.D. Ohio 2010).

The Commissioner also purports that remand is not necessary because VE testimony established that an inability to reach above shoulder level would not affect Plaintiff's ability to perform the jobs the ALJ relied upon for his step five finding. (Tr. 707).  However, based on a reading of the hearing transcript, the VE never expressly indicated that this limitation would not alter the available jobs.   During the hearing, Plaintiff's counsel added the following two limitations to the ALJ's controlling hypothetical question: (1) that the individual would be unable to reach above shoulder level with the left arm, and (2) that the individual could not look up, down, or from side-to-side. (*Id.*).  The VE responded that limitations in turning one's head from side-to-side would not affect the jobs named, but all sedentary occupations require an individual to be able to look up and down. (Tr. 707-08).  Regarding the reaching limitation, the VE was silent.  Due to the VE's failure to speak to the limitation, particularly given that the VE specifically explained that turning from side-to-side would not affect the jobs named, the transcript fails to show that the reaching limitation would not have altered the VE's finding as to available work.   Accordingly remand is necessary for the ALJ to address the state agency doctors' opinions regarding Plaintiff's shoulder limitations, as well as other significant evidence in the record relating to this impairment, and provide a reasoned explanation as to why any limitation may not be included in the RFC.

### 2.   Cervical spine movement

Blackman also argues that the ALJ failed to consider his restricted ability to move his neck due to cervical ankylosing spondylitis.  According to Plaintiff, the evidence demonstrates that he was unable to look from side-to-side or up and down, and the RFC should have been included limitations accounting for these limitations.  Among other evidence, Plaintiff notes a physical examination in July 2010 showed he was severely limited in the range of motion in his neck and was unable to touch his chin to his chest or raise his chin. (Tr. 533).  In March 2011, Dr. Yue found markedly reduced extension and flexion in Plaintiff's neck (Tr. 590).

The Commissioner argues that substantial evidence supports the ALJ's decision that Plaintiff suffered no limitations in neck movement.  In support of this argument, the Commissioner notes that the evidence Plaintiff cites to indicating a limited range of motion arose when Plaintiff was not taking Humira, which was shown to improve his symptoms.  Therefore, according to the Commissioner, Plaintiff experienced less functionality than he would have, had he been on Humira.

When formulating the RFC the ALJ acknowledged that Plaintiff suffered from cervical ankylosing spondylitis as evidence by an August 2008 x-ray. (Tr. 20).  The ALJ then stated that Plaintiff's pain began to improve in November 2009 once he started taking Humira. (*Id.*).  While this observation may imply that Plaintiff had a greater range of motion in his neck, the ALJ did not actually observe that Plaintiff's ability to move his neck improved, nor is it clear to what extent Plaintiff's range of motion purportedly increased due to the drug.  The ALJ's decision does not otherwise elaborate on Plaintiff's neck impairment.

During the administrative hearing, the VE testified that looking from side-to-side would not affect the sedentary jobs named and relied upon by the ALJ at his step five finding. (Tr. 707).

9

As a result, any error by the ALJ failing to fully consider Plaintiff's alleged limitation in looking to the side was harmless.  Nevertheless, the VE also testified that an individual must be able to look up and down to perform any sedentary job. (Tr. 707-08).  Therefore, Plaintiff may have been prejudiced by the ALJ in failing to fully consider such limitation.

Because remand is necessary for the ALJ to more fully evaluate Plaintiff's osteoarthritis of the left shoulder and its impact on his ability to work, the ALJ should also more fully consider Plaintiff's ability to move his neck in order to look up and down.  If the ALJ finds Plaintiff is not limited in this regard, the ALJ should clearly articulate why he so finds.

**B.  Whether the ALJ erred in evaluating Plaintiff's credibility**

It is the ALJ's responsibility to make decisions regarding the credibility of witnesses. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the] ALJ is charged with the duty of observing a witness's demeanor and credibility." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).  Notwithstanding, the ALJ's credibility finding must be supported by substantial evidence, *Walters*, 127 F.3d at 531, as the ALJ is "not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.' " *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (*quoting* SSR 96-7p).

The Sixth Circuit follows a two-step process in the evaluation of a claimant's subjective complaints of disabling pain. 20 C.F.R. § 404.1529(a); *Rogers*, 486 F.3d at 247; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853-54 (6th Cir. 1986); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).  First, the ALJ must determine whether the claimant has an underlying medically determinable impairment which could reasonably be expected to produce

the claimant's symptoms.  *Rogers*, 486 F.3d at 247.  Second, if such an impairment exists, then the ALJ must evaluate the intensity, persistence and limiting effects of the symptoms on the claimant's ability to work.  *Id.*  The ALJ should consider the following factors in evaluating the claimant's symptoms:   the claimant's daily activities; the location, duration, frequency and intensity of the claimant's symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; treatment, other than medication, the claimant receives to relieve the pain; measures used by the claimant to relieve the symptoms; and statements from the claimant and the claimant's treating and examining physicians.  *Id.*; *see* *Felisky*, 35 F.3d at 1039-40; SSR 96-7p.

Here, in determining Blackman's credibility, the ALJ followed the two-step process, finding that Blackman's impairments could be expected to cause the symptoms he alleged. (Tr. 20).  However, the ALJ went on to find the effects of Plaintiff's symptoms were not credible to the extent they were inconsistent with the RFC finding. (*Id.*).

Later in his opinion the ALJ provided reasons that support his credibility analysis. The ALJ observed that medication improved, at least to some extent, Plaintiff's symptoms arising from his orthopedic ailments. (Tr. 20, 310).  Although Plaintiff notes that Dr. Yue speculated that, "even if [Blackman] has been taking Humira on a regular basis, he may still have significant functional limitations" (Tr. 554), treatment records show Humira provided some relief. (See, e.g., 310).  For instance, in November 2009, Plaintiff told Dr. Krofina that Humira helped with his pain, he was able to move better, and he was less tired and achy. (Tr. 308, 316). Additionally, the ALJ observed Plaintiff reported hip replacement surgery provided relief for his pain. (Tr. 20-21, 692).

11

The ALJ also explained that Plaintiff's orthopedic problems had persisted for some period of time and have not occurred suddenly. (Tr. 21).  Building on this thought, the ALJ noted that Plaintiff was capable of performing a job that exceeded the assigned RFC of modified sedentary work, despite suffering from many of the conditions he opined now limited him. (*Id.*). The ALJ did not identify what job he referred to in his opinion, but it appears to have been Plaintiff's job as a material handler, which was performed at the heavy level. (Tr. 703).  Plaintiff quit this job in March 2008, one month before he alleges he became disabled, because he had lost his social security benefits and needed to stop working in order to become eligible once again. (Tr. 173A).  While this evidence arises just outside of the disability period and is of lesser import, Plaintiff's ability to perform such work does provide some ground to undermine the credibility of his complaints as related to his limitations, particularly given that Plaintiff suffered from some of these impairments at a time when he was able to perform heavy work.

Plaintiff also argues that the ALJ erred in his credibility determination by failing to discuss any of the factors set forth in the regulations.  Nevertheless, an ALJ is not required to explicitly discuss all of the credibility-weighing factors identified in the regulations, as long as the ALJ considered most, if not all, of the factors. *Bowman v. Chater*, 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam), *see also, Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").  Here, the ALJ considered a number of the factors listed in the regulations.  The ALJ noted the effectiveness of Plaintiff's medication, treatment in the form of surgery, Plaintiff's activities, and statements from Plaintiff.  (Tr. 20).

Plaintiff is correct in observing that the ALJ has a duty to provide a rational, non-conclusory explanation for his credibility analysis.  *See* SSR 96-7p, 1996 WL 374186, at *6-7. While the ALJ's credibility determination is not a model to follow, it provides sufficient grounds for his determination.  Given that remand is necessary for the ALJ to address error at other steps in the disability determination, the ALJ is encouraged to more clearly articulate his credibility determination upon remand.

### C.  Whether the ALJ erred in determining that Plaintiff's impairment or combination of impairments did not medically equal a listed impairment

Plaintiff takes issue with the ALJ's step three finding on a number of grounds.  First, Plaintiff argues that the ALJ erred in concluding that his impairments of ankylosing spondylitis and bilateral hip osteoarthritis did not meet or medically equal Listings 14.09C or 1.02A, and relatedly, that the ALJ failed to sufficiently articulate the listing analysis in relation to these impairments.  Additionally, Blackman maintains that the ALJ should have procured medical expert testimony on the issue of equivalency.

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(a)(4)(iii), 404.1520(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010).  The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 416.925(a), 404.1525(a).  Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 416.925(c)(3), 404.1525(c)(3).

A claimant will be deemed disabled if his impairments meet or equal one of these listings.  In order to "meet" a listing, the claimant must satisfy all of the listing's requirements. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009).  However, if the claimant does not meet all of the listing's requirements, he may still be deemed disabled if his impairments "medically equal" the listing in question.  20 C.F.R. §§ 416.926(b)(3), 404.1526(b)(3).  To do so, the claimant must show that his impairments are "at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. §§ 416.926(a), 404.1526(a).

### 1.  Listing 1.02A

Plaintiff argues that the ALJ erroneously determined his bilateral hip osteoarthritis did not meet or medically equal Listing 1.02A.   However, a review of the record shows the ALJ's determination finds substantial support. Listing 1.02A requires:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, § 1.02A.  "Inability to ambulate effectively" is defined as an extreme limitation of the ability to walk that interferes very seriously with an individual's ability to initiate, sustain, or complete activities. *Id.* § 1.00B2b(1).  Ineffective ambulation is generally a limitation so serious that it does not permit ambulation without the use of a hand-held assistance device limiting the use of both upper extremities. *Id.*  Examples of ineffective ambulation include

14

the inability to walk without the use of a walker, two crutches, two canes, or an inability to carry out routine ambulatory activities, such as shopping and banking.  *Id.* § 1.00B2b(2).

In concluding that Plaintiff did not meet or equal the relevant listing, the ALJ explained that Blackman "remains capable of ambulating effectively." (Tr. 18).  Plaintiff does not contend that the record reflects an inability to ambulate as required by the listing, nor has he pointed to any evidence showing so.  The record lends support to the ALJ's observation regarding Plaintiff's ability to walk.  As part of his application for benefits, Plaintiff submitted a Functioning Report. (Tr. 149-56).  Though the report was completed earlier on in the disability period, before Plaintiff's hip condition somewhat worsened, the report indicated that Plaintiff was able to shop, wash dishes and clean his kitchen, take out the trash, and do laundry. (Tr. 152).  In March 2010, before his hip replacement surgery, Blackman's doctors described that he was "walking ok," though he had a "slightly antalgic gait." (Tr. 499, 533).  The ALJ observed that after Plaintiff's hip replacement surgery in March 2011, Plaintiff was able to walk with the assistance of one cane. (Tr. 20).  Thus, substantial evidence belies the ALJ's finding that Plaintiff's ability to ambulate was not so severely impaired that it fulfilled the requirement of the listing.

Blackman challenges the level of the ALJ's articulation at step three.  He contends that the ALJ failed to conduct a sufficient analysis of whether the evidence presented met or equaled the requisite listing.  In *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011), the Sixth Circuit observed that "the ALJ needed to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review."  However decisions in this district, relying on Sixth Circuit case law, have stated that a "heightened articulation" standard at step three is not required.  *See, e.g., Walker v. Astrue*, 1:12-

CV-01284, 2013 WL 591968, at *4 (N.D. Ohio Jan. 18, 2013) *report and recommendation adopted*, 1:12-CV-1284, 2013 WL 592008 (N.D. Ohio Feb. 14, 2013); *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010) (*citing Bledsoe v. Barnhart*, No. 04–4531, 2006 WL 229795, at *411 (6th Cir. Jan. 31, 2006)).   Here, it appears the ALJ evaluated the evidence, and went on to articulate why Plaintiff's impairment did not meet or equal Listing 1.02A in a manner that permits review, and his decision is supported by substantial evidence in the record.

### 2.  Listing 14.09

Similarly, Blackman maintains that his cervical and lumbar ankylosing spondylitis met or medically equaled the requirements of Listing 14.09.   Listing 14.09, relating to cases of inflammatory arthritis, directs a presumption of disability upon a showing of inflammatory arthritis involving the axial spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09B (effective June 7, 2011 to June 12, 2012).   In adults, inflammatory arthritis involving the axial spine may be associated with disorders such as ankylosing spondylitis. *Id.*   The Commissioner is to evaluate inflammatory arthritis under the listings in the following manner:

> (i)  Listing-level severity in 14.09A and 14.09C1 is shown by an impairment that results in an "extreme" (very serious) limitation. . . . In 14.09C1, if you have the required ankylosis (fixation) of your cervical or dorsolumbar spine, we will find that you have an extreme limitation in your ability to see in front of you, above you, and to the side. Therefore, inability to ambulate effectively is implicit in 14.09C1, even though you might not require bilateral upper limb assistance.

*Id.* Listings 14.09C1 further defines the required ankylosis, or fixation, of the dorsolumbar or cervical spine to be at 45° or more of flexion from the vertical position (zero degrees). 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.09C1. This fixation must be shown by appropriate medically acceptable imaging and measured on physical examination. *Id.*

Here, the ALJ determined that Plaintiff, though he suffered from ankylosing spondylitis of the cervical and lumbar spine, did not meet or equal the listing, because Plaintiff's spine was "not bent." (Tr. 18). The ALJ also stated that Plaintiff remained capable of ambulating effectively. (*Id.*).

Plaintiff argues that the ALJ erred in finding that his spine is not bent, and moreover, that evidence in the record duplicates the criteria of Listing 14.09. Regarding the curvature in his cervical spine, Plaintiff notes that in June 2009, Dr. Cheung Cho Yue performed a physical examination that involved an occiput to wall test. (Tr. 334-35). An occiput to wall test is used to evaluate the progression of a loss of cervical range of motion.[2] The individual stands with his heels and scapulae touching the wall. Normally in this position, the occiput, or back of the head, should touch the wall. Dr. Yue observed that the distance from Blackman's occiput was at least ten inches from the wall. (Tr. 335). In October 2009, Dr. Jihad Jaffer observed that Plaintiff's cervical lordotic curvature was decreased, indicating abnormality. (Tr. 320). In January 2011, Dr. Brendan Patterson commented on Plaintiff's stooped posture. (Tr. 568).

Plaintiff also points to evidence which he argues establishes serious limitations in cervical movement. For example, in October 2009, Plaintiff's physical exam showed his neck movement was "extremely limited" in all planes (Tr. 316), and in July 2010, Dr. Yue found Plaintiff had a markedly reduced range of motion in his neck, especially with extension and flexion. (Tr. 530).

The Commissioner maintains that remand is not warranted on this allegation of error because Plaintiff has failed to come forward with evidence showing that he met the requirements of the listing and failed to show that there exist other findings of at least equal medical significance to the criteria. The Commissioner notes that Plaintiff has not pointed to the

---

[2] *Rheumatology Secrets*, 256 (Sterling G. West, ed, 2nd ed. 2002).

necessary imaging to establish a curvature in the cervical spine.  Additionally, the Commissioner argues that the listing requires the claimant's inability to see in front, above, and to the side to be so extreme that it results in an inability to ambulate effectively.  The Commissioner points out that Plaintiff has not shown his neck impairment has such an effect on his ability to walk.

Plaintiff's assertion that the ALJ inaccurately stated his back is not bent raises some concern.  The medical evidence in the record Blackman points to shows some degree of abnormal curvature in his cervical spine.  Because the ALJ stated Plaintiff's spine is "not bent," it is unclear whether the ALJ misinterpreted the evidence, ignored the evidence, or instead, analyzed the evidence and intended to communicate that Plaintiff's spine was not bent to the degree the listing requires.  On the other hand, Plaintiff bears the burden of proving that he meets or equals a listing.  *Burress v. Secretary*, 835 F.2d 139 (6th Cir. 1987).  Listings are to be interpreted strictly, and the plaintiff must present specific medical information to establish the existence of all elements of the listing. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001).  While Plaintiff's spine may exhibit some curvature and limited range of motion, it appears that for a showing of equivalency, a claimant would also need to establish that spinal fixation results in an inability to ambulate effectively.  Blackman does not argue that the fixation in his cervical spine affected his ability to walk, and the ALJ observed that Plaintiff's ability to ambulate was unimpaired.  Nevertheless, because remand is necessary on other grounds, the ALJ should clarify his statement regarding the bend in Plaintiff's spine and his analysis under Listing 14.09.

### 3.  Medical Expert Testimony

Blackman argues that the ALJ erred in failing to procure medical expert testimony about whether he medically equaled a listed impairment.  Plaintiff cites Social Security Ruling 96-6p, which states that

18

> [L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight.

Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 at *3 (July 2, 1996).  Importantly, the ruling explains that when an ALJ determines equivalency is not established, the requirement to receive expert opinion evidence into the record can be satisfied by a Disability Determination and Transmittal form or other document that reflects the findings of the consultant and is signed by the consultant.[3]  *Id.*; *Bridges v. Comm'r of Soc. Sec.*, 1:09-CV-2872, 2011 WL 1113442 (N.D. Ohio Jan. 12, 2011) *report and recommendation adopted*, 1:09-CV-2872, 2011 WL 1113430 (N.D. Ohio Mar. 24, 2011).  Here, the opinions of two medial consultants were in the record, in the form of Drs. McCloud and Caldwell's signatures on the Disability Determination and Transmittal forms and their own Physical Residual Functional Capacity Assessments. (Tr. 30-31, 221-28, 359).  Additionally, Dr. Villanueva completed a Physical Residual Functional Capacity Assessment on June 23, 2008. (Tr. 177-84).

As the ruling explains, additional medical expert evidence is only required under two circumstances, both of which are discretionary:

> 1. "When no additional medical evidence is received, but in the opinion of the administrative law judge . . . the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable;" or

---

[3] Specifically, SSR 96-6p provides: "The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review." 1996 WL 374180 at *3.

2.   "When additional medical evidence is received that in the opinion of the administrative law judge . . . may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

SSR 96-6p, 1996 WL 374180, at *4.  Plaintiff has not shown that further action was necessary by the ALJ in the present case.  First, Plaintiff points to no evidence showing that the ALJ believed a finding of equivalence was reasonable.  Next, Blackman does not show that the ALJ thought the consultant's finding of non-equivalency would have changed.  Plaintiff argues that an updated expert opinion was need, because the ALJ gave little weight to Dr. Villanueva's opinion because the physician did not review evidence that was submitted at the hearing level. (Tr. 21). While it is evident that the ALJ disagreed with Dr. Villanueva's RFC recommendation, due to the reviewer's evaluation of an incomplete record, it was not apparent that the ALJ would have also disagreed with Dr. Villanueva's equivalency determination.

Additionally, Plaintiff mistakenly argues that there were no other opinions on equivalency rendered by a state agency physician.  Both Drs. McCloud and Caldwell considered whether Plaintiff's impairments met or equaled listing level, and they conducted their reviews at a later date in the disability period.  The ALJ, however, did not discuss these doctors' opinions while making his listing determination.

At the ALJ level, responsibility for deciding medical equivalence rests with the ALJ. 20 C.F.R. § 404.1526(e).  In determining medical equivalence, it is proper for an ALJ to rely upon a state agency medical consultant's opinion that a claimant's impairment(s) does not meet a Listing.  SSR 96-6p, 1996 WL 374180, * 3 (July 2, 1996).  Because remand is otherwise necessary for the ALJ to reevaluate Plaintiff's RFC, the ALJ will have the opportunity to determine whether he wishes to rely on the state agency opinions in the record regarding equivalence, or if he believes that additional expert testimony is needed.

## VI.  DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the Court VACATES the decision of the Commissioner and REMANDS the case to the Social Security Administration.

IT IS SO ORDERED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date:  March 13, 2014.

21